UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| WINSTON BRAKEALL,<br><br>                                                     Plaintiff,<br><br>vs.<br><br>DENNIS KAEMINGK, Secretary of Corrections, individual and official capacity; BRENT FLUKE, Director of Prison Operations, individual and official capacity; KRIS KARBERG, individual and official capacity; and REBECCA SCHIEFFER, individual and official capacity.<br><br>                                                  Defendants. | Civ. 18 - 4056<br><br><br>**S E C O N D  A M E N D E D**<br>**C O M P L A I N T** |

COMES NOW Plaintiff Winston Brakeall, by and through his attorney, and hereby states and alleges the following for his Complaint:

       1)       In October 2017, the South Dakota Department of Corrections cut all funding to hire and pay for lawyers who provided essential services to inmates and determined that previously accessible hardcover legal resources would no longer be available.  As a substitute, the DOC offered inmates access to an electronic tablet with a pre-loaded electronic database.  This decision unlawfully restricts inmates' fundamental right to open access to the Courts and violates the U.S. Constitution, the Constitution of the State of South Dakota, and federal law.

      2)       Plaintiff Winston Brakeall ("Brakeall") has suffered, and will continue to suffer, an actual, cognizable injury as a result of Defendants' decision to deprive inmates of access to the Courts.

1

3) With this action, Brakeall states claims for declaratory and prospective injunctive relief, pursuant to 28 U.S.C. §2201, based on violations of: (a) his right of access to the Courts as protected by the First and Fourteenth Amendments of the United States Constitution and Article Six, Section 20, of the South Dakota Constitution; (b) his right to receive or provide assistance from other inmates in the absence of other resources; and (c) his rights as a person with a disability under Title II of the Americans with Disabilities Act. Brakeall also states a declaratory judgment holding that the DOC breached of its obligations under a Settlement Agreement in a prior lawsuit with inmates and seeks the equitably remedy of specific performance of the DOC's obligations thereunder, pursuant to SDCL Chapter 21-9.

4) Plaintiff seeks a speedy hearing, as provided under F. R. CIV. P. 57, and specifically seeks a declaratory judgment determining that Defendants have deprived Brakeall of his state and federal constitutional rights and have unlawfully discriminated against him and others who qualify as having a disability under the ADA.

## PARTIES, JURISDICTION, AND VENUE

5) Plaintiff is an incarcerated prisoner within the South Dakota State Penitentiary ("SDSP") in Sioux Falls, South Dakota.

6) Defendant Dennis Kaemingk is the Secretary for the South Dakota Department of Corrections ("SDDOC") and has served in that capacity since May 2011.

7) Defendant Bob Dooley is Warden of the Mike Durfee State Prison in Springfield, South Dakota, and also serves as Director of Prison Operations for the SDDOC.

8) On information and belief, Defendant Jennifer Stanwick-Klimek was formerly Associate Warden at Mike Durfee State Prison in Springfield, South Dakota, and held that position during material events alleged in this action.

9) On information and belief, Defendant Rebecca Schieffer, on information and belief, is currently Associate Warden at Mike Durfee State Prison in Springfield, South Dakota.

10) This Court has subject matter jurisdiction of Counts One, Two, and Four under 28 U.S.C. §1331 and has supplemental jurisdiction over Counts Three and Five under 28 U.S.C. §1367.

11) Venue is appropriate in this Court pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

**A. DOC's budget priorities override inmates' constitutional right to access the courts.**

12) On or about October 2, 2017, the DOC terminated its contract with a lawyer and paralegal ("legally-trained individuals") who provided legal assistance, forms, and research to inmates within the custody and care of the DOC.

13) Defendant Kaemingk has publicly explained that the elimination of on-site lawyers and access to legal advice was driven by a desire to save money.

14) On information and belief, the legal aid contract in 2017 was budgeted for $135,400. The legal research contract supplanting those services cost $54,720.

15) On information and belief, the DOC's budget in 2017 was $116,905,842.00.

16) On information and belief, the total savings in eliminating the legal aid contract – approximately $81,000 – represents less than 0.07% of the DOC's budget as a whole.

17) In putting an emphasis on dollars and cents, the DOC has not only compromised the constitutional rights of inmates, but also sacrificed its own principles.

18) The DOC previously adopted a policy and practice of providing legal assistance to "all inmates, including inmates who are illiterate, non-English speaking, and/or disabled."

19) The change in policy discriminates against those inmates who are illiterate, who are non-English speaking, or who suffer from a disability that impairs their ability to read, write, and comprehend written language effectively.

20) Defendant Kaemingk publicly declared that the DOC could abandon this policy, as it was not part of a settlement agreement into which it had entered in 1999 as a result of past violations of prisoners' rights in 1999.

21) The settlement agreement in question arose from litigation initiated in 1998.

22) The settlement agreement affirmatively requires that the DOC contract with and pay for certain legal services to be rendered on behalf of, and for the benefit of, inmates held in custody in DOC facilities.

23) The DOC has breached its obligations under the settlement agreement and should be compelled to perform such obligations and honor the terms of the agreement.

24) Denying prisoners access to competent, trained legal staff and adequate legal materials is facially unconstitutional.

25) The policy change actually injures Brakeall and all other inmates who have need of legal services and access to legal materials, including prisoners who are illiterate, non-English speaking, and visually impaired.

26) Under the overbreadth doctrine, Brakeall has standing to challenge the DOC's change in policy, which unlawful restricts the First Amendment rights of all prisoners who seek to exercise their right to petition and engage in protected expressive activity regarding the conditions of their confinement. As such, the current policy is facially invalid and unconstitutional.

27) Denying Brakeall access to competent, trained legal staff and to legal materials is also unconstitutional on an as-applied basis.

28) As applied to Brakeall personally, the policy is unconstitutional because it unlawfully denies him access to the Courts by materially limiting and impeding his ability to pursue discrete claims in separate lawsuits that he has commenced on a pro se basis.

29) Without any access to necessary assistance from legally-trained individuals and without meaningful access to legal resources and materials, Brakeall's claims have been dismissed or materially impaired.

**B. Brakeall's ongoing need of legal assistance and access to legal materials**

30) Brakeall, appearing pro se, has previously commenced two civil lawsuits against the DOC or various DOC employees: *Brakeall v. Stanwick-Klemick,* 17-04101-LLP and *Brakeall v. Kaemingk*, 16-cv-04057-KES (the "Underlying Suits").

31) Each of the Underlying Suits was initiated by Brakeall to challenge the conditions of his confinement and to seek redress for the ongoing violation of his civil rights.

32) Brakeall has been denied access to a lawyer from which he may obtain advice, legal research, and basic knowledge regarding the legal system, all of which would materially benefit his prospects of obtaining relief in each of the Underlying Suits.

33) Brakeall has also been denied meaningful access to research materials by which he himself could ascertain applicable law, review relevant case authority, and consult other secondary sources and materials, all of which would materially benefit his prospects of obtaining relief in each of the Underlying Suits.

34) Being denied access to a lawyer and to legal research materials has resulted in, and will continue to result in, irreparable injury to Brakeall and similarly situated Defendants.

35) The Underlying Suits commenced by Brakeall state non-frivolous claims for relief.

36) In each Underlying Suit, Brakeall has need of assistance from competent legally-trained individuals to which he and other inmates formerly had access via the contract that the DOC eliminated in October 2017.

37) In each Underlying Suit, Brakeall has need of access to adequate law libraries and materials.

38) Being denied access to these legally-trained individuals and adequate law libraries has deprived Brakeall of adequate resources to pursue claims for legal relief and materially abridged his right to access the courts.

39) Brakeall has been irreparably harmed as a result of the DOC's policy denying prisoners access legally-trained individuals.

40) But for the denial of access to legally-trained individuals, Brakeall would have been apprised of the need to allege that he had exhausted all administrative remedies and to establish as much.

41) In CIV 17-04101, Brakeall had claims relating to the conditions of his confinement dismissed because it was apparent from the face of his complaint that he had failed to exhaust administrative remedies. *See, e.g.,* Doc. 12, at 15-16.

42) Had Brakeall had access to legally-trained individuals and an adequately sourced legal library, he would have either been advised or discovered that at least one of the claims that he alleged in CIV 17-04101 – that the conditions of his bed and cell constituted cruel and unusual punishment – could have survived dismissal had it been averred under a different legal theory.

6

43) But for the denial of access to legally-trained individuals and an adequately sourced legal library, Brakeall would have been advised or discovered that the same factual allegations regarding his bed and cell conditions would support a viable failure-to-accommodate claim under Title II of the Americans with Disabilities Act.

44) The advantage of such a claim is that he may recover monetary damages in certain situations where such relief is not available under a claim arising under 42 U.S.C. §1983.

45) Brakeall made several allegations under the ADA in his pleading, but that pleading lacked the requisite specificity (including identifying the individual(s) against whom the claim was being made). As a result of these facial defects, the ADA Claim was dismissed.

46) Had Brakeall had access to legally-trained individuals and an adequately sourced legal library, he would have been advised of the threshold pleading standards that he failed to meet or discovered that fact himself and, under either scenario, would have cured the defects in his pleading before submitting it for review.

47) The inadequacy of legal materials in the electronic database and the complete denial of access to legally-trained individuals has caused an actual injury to Brakeall by hindering his efforts to pursue a legal claim and otherwise frustrating or impeding the progress and overall effectiveness of each Underlying Suit.

48) Brakeall has grieved this issue with the DOC and has exhausted all administrative remedies.

49) Each Defendant conceived of the change in policy that deprived Brakeall of his civil rights or administered, implemented, condoned, and put into practice that change in policy.

50) Each Defendant's individual actions were undertaken under color of state law.

51) The loss of viable claims for which Brakeall would have been entitled to relief in CIV 17-04101 constitutes an actual, particularized injury of which the DOC's unconstitutional actions are the direct and proximate cause.

52) Other changes made in the same time period exacerbate the effect of restrictions on access to the Courts that the Defendants have imposed.

53) At or around September 2017, the Defendants changed the policy regarding computer access for legal purposes at Mike Durfee State Prison. Before the change, inmates could access computers to type legal matters for up to 9 hours per week. After the change, inmates could access computers to type legal matters for 2 hours a week.

54) The officials also began to charge prisoners $0.25 per page to print legal materials prisoners have prepared, whereas previously there had been no charge for this purpose.

55) Brakeall has grieved these matters and exhausted his administrative remedies in seeking relief from them.

### C. Systemic deficiencies arising from DOC's change in policy.

56) Prisoners who lack the experience or technical facility to use the electronic legal research databases have no meaningful alternative and no meaningful access to the courts.

57) Prisoners who are illiterate, who do not speak English, or whose physical conditions limit or impair an ability to read, write, and comprehend the written word have no meaningful alternative and no meaningful access to the courts.

58) The electronic database is not, and can never be, an adequate substitute for having access to legally-trained individuals, to accepted legal templates and forms, and to an adequately-stocked law library, even for those individuals who are able to read, write, and operate an electronic tablet.

59) Inmates have experienced numerous problems associated with the research materials that may be accessed through the tablets, including unreliable service and a narrower range of legal resource materials.

60) With respect to unreliability, the tablets by which prisoners may access Lexis-Nexis and certain legal materials depend on wireless service through provider GTL.

61) The materials are not stored on the tablets, but can be accessed through wireless service that routinely short-circuits, is interrupted, or is otherwise compromised.

62) Brakeall has submitted Informal Resolution Requests noting periods during which service short-circuited, was interrupted, or was otherwise compromised.

63) Brakeall has received administrative responses from prison officials admitting and acknowledging that GTL service was unavailable and interrupted.

64) Even if the alternative electronic materials were substantively equivalent to access to a legally-trained individual and legal research materials, the spotty, episodic service provided by a for-profit third party – one with a history of questionable business practices – guarantees that prisoners who do not know how to use the tablets will be deprived of access to legal materials.

65) Brakeall and other prisoners previously had access to hard-cover lawbooks, such as American Jurisprudence, that were commonly cited by the South Dakota Supreme Court and that are accessible to individuals with no experience with or facility using electronic databases.

66) Under the DOC current policy, prisoners no longer have access to copies of these commonly-cited hardcover lawbooks and instead are instructed to consult various electronic databases that are more rarely relied on by the South Dakota Supreme Court or the District Court of South Dakota.  These databases include:

- *Constitutional Rights of Prisoners*
- *Criminal Defense Techniques*
- *Criminal Law Advocacy*
- *Criminal Law Defense*
- *Moore's Criminal and Defense Techniques*
- *Moore's Federal Practice – Civil*
- *Weinstein's Evidence Manual*
- *Ballantine's Law Dictionary.*

67) The DOC has not discarded the hardcover legal books, but has instead stored them in a locked room where they are visible to prisoners, but not accessible.

68) Denying Brakeall and other litigant-prisoners access to the hardcover legal books limits and impedes their respective efforts to gain access to the courts and works an actual injury for which the law provides a remedy.

69) The termination of the attorney-services contract has left inmates without reasonable access to alternative forms of assistance.

70) Since the termination of the attorney-services contract, personnel at Mike Durfee State Prison have adopted a de facto policy that prohibits inmates from providing formal assistance to one another.

71) Brakeall and other inmates have a right to provide or receive assistance, and Defendants have condoned, authorized, or remained deliberately indifferent to a pattern of conduct at Mike Durfee that prevents, impedes, and abridges the exercise of this right.

## **COUNT ONE:  REQUEST FOR DECLARATORY JUDGMENT**

72)     Brakeall incorporates by reference each and every preceding paragraph, as if fully set forth herein.

73)     Brakeall enjoys a fundamental right of access to the Courts under the Fourteenth Amendment of the United States Constitution.

74)     Brakeall also enjoys a right to petition for redress of grievances under the First Amendment of the United States Constitution.

75)     A live, justiciable controversy exists whether the DOC's current policy violates the United States Constitution and the South Dakota Constitution.

76)     A live, justiciable controversy exists whether the DOC's current policy deprives Brakeall and other similarly situated individuals of their right of access to the courts, as protected by the Fourteenth Amendment of the United States Constitution; their right to petition the Courts to seek redress of grievances, as protected by the First Amendment of the United States Constitution; and their right to receive or provide assistance to others in the absence of reasonable access to alternative assistance.

77)     Following expedited discovery, Brakeall seeks a hearing at which he may be heard and ask the Court to declare the rights and other legal relations of the interested parties.

78)     The controversy at issue is ripe for adjudication.  Prudential factors – including the usefulness of the declaration of the rights of the parties and the ability to resolve expeditiously the present controversy, which affects every potential litigant-prisoner in the DOC's custody – favor proceeding directly to adjudicate this controversy, which is consistent with the discretion afforded this Court under the Declaratory Judgment Act.

79) Brakeall is entitled to a declaratory judgment holding that the DOC's current policy is unconstitutional, is in violation of his civil rights and the civil rights of other litigant-prisoners and would-be litigant prisoners, and constitutes a knowing violation of a clearly established right.

80) Brakeall is entitled to such other just and equitable relief as this Court deems necessary and appropriate.

### COUNT TWO: VIOLATION OF RIGHT OF ACCESS TO THE COURTS GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, 42 U.S.C. §1983

81) Brakeall incorporates by reference each and every preceding paragraph, as if fully set forth herein.

82) Brakeall enjoys a fundamental right of access to the Courts under the Fourteenth Amendment of the United States Constitution.

83) Defendants have wrongfully abridged that right of access by denying him access to legally-trained individuals and adequate legal research materials and resources.

84) Brakeall enjoys a fundamental right to petition the Government for redress of grievances and to engage in expressive activity under the First Amendment of the United States Constitution.

85) Defendants have wrongfully abridged that right to petition by denying him access to legally-trained individuals and adequate legal research materials and resources, all of which are necessary conditions to the meaningful exercise of that right.

86) Defendants knew, or should have known, that denying Brakeall and all other inmates access to legally-trained individuals and adequate legal research materials and resources violated clearly established law.

87) Defendants' conduct violates Brakeall's civil rights in violation of 42 U.S.C. §1983.

88) Brakeall is entitled to declaratory and prospective injunctive relief to enjoin Defendants from continuing to deprive him of his right to access the courts and to affirmatively compel Defendants to provide resources and access that are sufficient to vindicate that constitutional right.

89) Brakeall is further entitled to all such other just and equitable relief as the Court determines is necessary, including but not limited to payment of his attorneys' fees, entry of a judgment decree sustaining jurisdiction over the DOC and its facilities, and appointment of a special monitor to oversee implementation of the requested relief.

## COUNT THREE: VIOLATION OF RIGHT TO PROVIDE OR RECEIVE ASSISTANCE FROM OTHERS, 42 U.S.C. §1983

90) Brakeall incorporates by reference each and every preceding paragraph, as if fully set forth herein.

91) Upon cancellation of the attorney-services contract, inmates had a right to seek and receive assistance to other inmates, and a right to provide such assistance.

92) A prior prison policy permitting prisoners to provide assistance was rescinded or withdrawn by Defendant Kaemingk after terminating the legal services contract.

93) After the official policy was rescinded, personnel at Mike Durfee State Prison have adopted and enforced a de facto policy that discourages and affirmatively prevents inmates from providing assistance to others.

94) Defendants have either condoned, impliedly authorized, or remained deliberately indifferent to this de facto policy, which has injured Brakeall and other inmate litigants and is likely to cause further injury in the future.

95) Brakeall is entitled to declaratory and prospective injunctive relief to enjoin Defendants from continuing to condone, permit, or remain deliberately indifferent to enforcement of the de facto policy and from failing to adopt and enforce a formal policy that expressly and unequivocally acknowledges inmates' right to receive and provide assistance to each other.

## COUNT FOUR:  VIOLATION OF SOUTH DAKOTA'S CONSTITUTIONAL PROVISION ASSURING ACCESS TO THE COURTS

96) Brakeall incorporates by reference each and every preceding paragraph, as if fully set forth herein.

97) Under the South Dakota Constitution, each person who has suffered an injury to his property, person, or reputation "shall have remedy by due course of law, and right and justice, administered with denial or delay."

98) Defendants have wrongfully abridged that right of access by denying him access to legally-trained individuals and adequate legal research materials and resources.

99) Defendants knew, or should have known, that denying Brakeall and all other inmates access to legally-trained individuals and adequate legal research materials and resources violated clearly established law.

100) Brakeall is entitled to declaratory and prospective injunctive relief to enjoin Defendants from continuing to deprive him of his right to access the courts in violation of the South Dakota Constitution and to affirmatively compel Defendants to provide resources and access that are sufficient to vindicate that constitutional right.

101) Brakeall is further entitled to all such other just and equitable relief as the Court determines is necessary, including but not limited payment of his attorneys' fees, entry of a judgment decree sustaining jurisdiction over the DOC and its facilities, and appointment of a special monitor to oversee implementation of the requested relief

## COUNT FIVE:  VIOLATION OF AMERICANS WITH DISABILITIES ACT

102) Brakeall incorporates by reference each and every preceding paragraph, as if fully set forth herein.

103) Brakeall has a disability and is regarded as having a disability under the Americans with Disabilities Act.

104) Brakeall's disability consists of a physical impairment that substantially affects and limits a major life activity.

105) As a disabled prisoner, Brakeall has a vested interest in assuring that the DOC accommodates disabled individuals and does not enact or enforce policies that are discriminatory against such individuals.

106) The DOC is subject to the ADA under Title II thereof.

107) Title II provides that no qualified individual with a disability "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity" such as the DOC.

108) The DOC's policy in ending legal assistance and revoking access to legal materials discriminates against those disabled prisoners whose disability stems from blindness or who are otherwise visually impaired (the "Visually Impaired Class").

109) The DOC's policy in ending legal assistance and revoking access to legal materials discriminates against those disabled prisoners whose disability stems from mild to

severe mental retardation, fetal alcohol syndrome, learning disabilities, mental illness, neurological disorders, and other conditions that result in diminished mental faculties (the "Mentally Impaired Class").

110) The DOC knows, or should know, that its current policy of denying access to adequate resources and legally-trained individuals has a disproportionate effect on disabled prisoners, including those in the Visually Impaired Class and Mentally Impaired Class.

111) Even if the DOC's policies were otherwise constitutional, they plainly deny equal access to disabled prisoners who are members of the Visually Impaired Class and the Mentally Impaired Class and fail to accommodate the disabilities of such individuals.

112) Tolerance for discrimination against certain disabled individuals breeds general disrespect and disregard for the rights of all disabled individuals.

113) The DOC has a pattern and practice of discriminating against individual disabled prisoners.

114) If the DOC is permitted to engage in a discriminatory practice against one or more classes of disabled individuals, the rights of all disabled prisoners are negatively impacted and the protections the ADA is intended to secure for all disabled people will be fundamentally eroded.

115) Brakeall has suffered an actual, particularized injury to the extent that the DOC's policy, as enacted and applied, exhibits reckless disregard for the rights of disabled prisoners who belong to the identified Classes and undermines recognition and acknowledgment of the rights of disabled prisoners in general.

116) Brakeall is entitled to preliminary and permanent injunctive relief enjoining the ongoing discriminatory misconduct against disabled prisoners and the ongoing reckless disregard of the rights of disabled prisoners in general.

### COUNT SIX: DECLARATORY JUDGMENT AND SPECIFIC PERFORMANCE

117) Plaintiff restates and incorporates by reference each and every preceding paragraph, as if fully set out herein.

118) The SD Department of Corrections entered into that certain Settlement Agreement in May 1999 in which it agreed to make certain changes to the contract that it employed and to continue to provide inmates with access to legal assistance in DOC facilities in South Dakota.

119) The DOC affirmatively agreed to undertake and perform the obligations set out in the Settlement Agreement and agreed to provide inmates with access to legal assistance in DOC facilities in South Dakota.

120) The DOC has an ongoing and continuing obligation under the terms of the settlement agreement to continue to provide inmates with access to legal assistance in DOC facilities in South Dakota.

121) The DOC has breached its obligations under the settlement agreement by terminating the attorney services contract and not otherwise offering substantially the same access to legal assistance, as it had promised.

122) Under the Declaratory Judgment Act, Brakeall is entitled to a declaratory judgment holding that the DOC has breached its obligations under the settlement agreement.

123) Under SDCL Chapter 21-9, Brakeall is entitled to the equitable remedy of specific performance and an Order compelling the DOC to continue to provide access to legal services, as contemplated by the settlement agreement and the promises the DOC made therein.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order entering relief as follows:

1. A declaratory judgment holding that Defendants have violated Brakeall's constitutional right of access to the courts and to petition the Government for redress of grievances, and awarding such other relief as is necessary and appropriate;

2. A preliminary and permanent injunction against Defendants that (a) enjoins Defendants from enforcing the current policy denying inmates access to legally-trained individuals and an adequate legal library; and (b) affirmatively compels Defendants to provide such access in a manner and within a time period as ordered by the Court, which shall retain continuing jurisdiction thereof;

3. A declaratory judgment holding that the DOC has breached its obligations under the settlement agreement and an order compelling the specific performance of the obligations therein relating to access to legal assistance.

4. A finding that the Court will continue to exercise jurisdiction over the case for a period of 5 years to assure that the terms and conditions of its injunctive relief are performed or otherwise satisfied;

5. An award to Plaintiff of all costs, taxes, disbursements, and reasonable attorney's fees incurred in bringing this action; and

6. For such other and further relief as the Court deems just, equitable, and appropriate.

Date: November 16, 2018.

                CADWELL SANFORD DEIBERT & GARRY LLP

                By /s/ Alex M. Hagen
                    Alex M. Hagen
                    200 East 10th Street, Suite 200
                    Sioux Falls SD 57104
                    E-mail: *ahagen@cadlaw.com*
                    Telephone: (605) 336-0828
                    ***Attorneys for Plaintiff***